DECISION
Plaintiffs appeal Defendant's denial of Plaintiffs' application for Exclusive Farm Use (EFU) Special Assessment for the 2010-11 tax year. A trial was held in the Oregon Tax Mediation Center on April 26, 2011. Plaintiff William J. Eimstad (Eimstad) appeared and testified on Plaintiffs' behalf. Steve Nasset (Nasset) appeared and testified on behalf of Defendant.
Defendant's Exhibits 1 through 3 were admitted without objection. Defendant's Exhibit 4 was admitted with objection.
Eimstad conceded that 2.3 acres of Plaintiffs' 11.57 acres were not in farm use and therefore those acres do not qualify for farm use special assessment.
 I. STATEMENT OF FACTS
Eimstad testified that he purchased 9.27 acres, identified as Accounts 0510337 and 1125697, (subject property at issue) in 2005. He testified that his "sole intent was to receive income" and "make a profit" from farming the subject property that is located in an Exclusive Farm Use zone. Eimstad testified that his intent is to have a vineyard and grow hay and other crops like blueberries and filberts. *Page 2 
Eimstad testified that, at the time he purchased the subject property, the land was in forest land deferral. He testified that it took him two years to clear the land, spending "$7,000 to rent equipment and $3,000 in fuel costs." Eimstad testified that, beginning in 2008 and thereafter, he seeded the land, grew and mowed the hay, and stored the hay for consumption by his horses. He testified that he "raised hay" to allow the land "to sweeten up" before planting grapes, stating it was "a long slow process." Eimstad testified that "five or six acres intentionally laid fallow from 2009 into 2010" to improve the soil by "disking the hay into the land" rather than "cutting the hay." He also testified that the land was "fallow for two years," from the end of summer 2009, when he "smoothed out the grass" that he "let grow," until the end of 2010, when he "filled it in to seed it." Nasset cited ORS308A.056(3)(b), stating that "[l]and lying fallow for one year as a normal and regular requirement of good agricultural husbandry" is the current employment of land for farm use. (Def's Ex 2.) Eimstad testified that he is "still working to get the land in shape for an orchard."
Eimstad testified that one year he was "approached by his neighbor who asked to buy 10 bales of hay." He testified that he "kept bees and hives on the property." Eimstad testified that, in 2008 and 2009, he sold "five or ten pounds of honey to various people." In response to Nasset's question, Eimstad testified that Plaintiffs have not filed their "1040s including Schedule F" for tax years 2008, 2009, and 2010 because, in 2008, Plaintiffs' partner "bailed" and there exists a "restraining order" on the property, "halting capital improvements or selling of the farm." He testified that Plaintiffs took a "hiatus from further planting of the orchard" because of the "court case restraining order."
Nasset testified that "current employment" of the land requires "an intent to make a profit in money." He testified that the county has to "go by what we see in the ground when we're *Page 3 
there." Nasset testified that he did not visit the property before January 1, 2010. Patrick Inman, the person who recommended that the subject property "be disqualified from forest deferral, due to a lack of adequate stocking based on a 2008 aerial photo and his observations from Hale Road" did not testify. (Def's Ltr at 1, Apr 4, 2011.) Nasset read portions ofEverhart v. Dept. of Rev., 15 OTR 76 (1999), defining the current employment of land for farm use, and primary purpose of using land. (Def's Ex 3.) He testified that "casual use of land or gentleman farmers are not farm use." Eimstad testified that the subject property is a "life long dream" and he "cut hay every year he could." He testified that he wants to work the land to "pay back investment in the land and make income."
Nasset referenced Sweet v. Washington County Assessor(Sweet), TC-MD No 991390B, stating that "feeding hay to pleasure horses is not a farm activity to obtain profit in money." (Def's Ex 4.) Eimstad objected to Nasset's reference to Sweet, stating that "that case was `non-EFU land'" and "is not relevant." He testified that he does "own pleasure horses" and the "pasture is used for cutting hay."
 II. ANALYSIS
The issue before the court is whether Defendant's denial of Plaintiffs' application for farm use special assessment for the subject property was proper.
A. Qualification for farm use special assessment
The stated legislative intent for special assessment of bona fide farm properties is to encourage owners of such properties, which "contribute significantly to Oregon's character and economy," to engage in qualifying farming activities. ORS 308A.050.[1] The legislature found "that providing the means for agriculture to continue and prosper is in the interest of all citizens *Page 4 
of this state, who benefit directly or indirectly from agricultural production and stewardship of farmlands and ranchlands."Id.
Under ORS 308A.062(1), "[a]ny land that is within an exclusive farm use zone and that is used exclusively for farm use shall qualify for farm use special assessment under ORS308A.050 to 308A.128, unless disqualified under other provisions of law." The first element of ORS 308A.062 is satisfied because there is no dispute that Plaintiffs' land is zoned for EFU. The only remaining question is if Plaintiffs have satisfied the second element, whether the land was used exclusively for farm use.
The definition of "farm use [is] the current employment of land for the primary purpose of obtaining a profit in money" by engaging in farming activities of the kinds listed in ORS 308A.056(1)(a) to (h).[2] See also Everhart v. Dept. of Rev.,15 OTR 76, 79-80 (1999) (discussing the definition of farm use). "The use of the word `current' refers to the present use of the land and suggests that the past or future use is largely irrelevant. The word `employment' suggests an *Page 5 
active, purposeful, directed use of the land." Id. From 2007 through summer 2009, Plaintiffs' land was seeded and hay was grown and stored primarily for consumption by Plaintiffs' horses. Plaintiffs also contend that there "were bees" on the subject property and Plaintiffs sold "five or ten pounds of honey to various people." Eimstad's testimony focused on his "intent" to operate a vineyard and raise other berry crops that would provide an income sufficient to recover his investment and make a profit. Future usage of Plaintiffs' land, however, is "largely irrelevant" to the farm use analysis. Id.
The statute focuses on the current use of the land. See ORS308A.056(1). In addition, the land must be used for qualifying farming activities. See ORS 308A.056(1)(a)-(h). To date, Plaintiffs have raised and harvested a crop. Eimstad's testimony was contradictory with respect to how long the land laid fallow. Eimstad first testified that the subject property laid fallow for more than a year and then later testified that the subject property lay fallow for a year. ORS 308A.056(3) provides that "land is currently employed for farm use if the land is * * * lying fallow for one year as a normal and regular requirement of good agricultural husbandry[.]" There is no evidence showing the exact time period that the subject property laid fallow and the reason that the subject property did lay fallow. In addition, Plaintiffs offered no evidence about the number of bee hives and the extent of that activity.
The "current employment" of the subject property must be "for the primary purpose of obtaining a profit in money * * *[.]" ORS308A.056(1). There is no evidence that Plaintiffs' "primary purpose" of the current employment of the subject property is for "obtaining a profit in money." (Id.) With the exception of a neighbor who one year asked to purchase hay from Plaintiffs, Plaintiffs have not sold the crops grown on the subject property. Plaintiffs have used their crop to feed their animals. This court has characterized a reduction in expenses as an *Page 6 
"indirect profit" that is to be excluded from consideration of "obtaining profit in money." Everhart, 15 OTR at 81; ORS308A.056. Eimstad's testimony that Plaintiffs' sold a few pounds of honey does not support sufficient use of the subject property to be the "primary purpose of obtaining a profit in money." ORS 308A.056.
When land within an exclusive farm use zone is not used for a qualifying farm use activity, it does not qualify for farm use special assessment under ORS 308A.056. Defendant, therefore, properly denied Plaintiffs' application for farm use special assessment under ORS 308A.056 because Plaintiffs did not currently employ their land for the "primary purpose of obtaining profit in money."
B. Plaintiffs' Allegation of Impossibility
Plaintiffs allege that they were prevented from making capital improvements or ability to meet the statutory requirements for farm use special because a "restraining order" was placed on the subject property. Eimstad testified that Plaintiffs took a "hiatus from further planting of the orchard" because of the "court case restraining order." Plaintiffs submitted no proof of a restraining order other than Eimstad's testimony.
In addressing Plaintiffs' request, the court must look to the applicable statute, ORS 308A.056. When analyzing a statute, the court's first step is to analyze its text and context. Seegenerally PGE v. Bureau of Labor and Industries,317 Or 606, 610-11, 859 P2d 1143 (1993). It is the role of the court to "ascertain and declare what is, in terms of substance, contained" in the statute. ORS 174.010. The court cannot add "what has been omitted or * * * omit what has been inserted." Id. ORS308A.056 specifically lists qualifying farm use activities and exceptions. See ORS 308A.056(1), (3). There are no applicable exceptions. Nowhere in the text of the statute does it state that land may qualify for farm use special assessment when the *Page 7 
land owners choose to not employ their land for farm use activities. To allow a non-farm use to qualify would be to include an exception to the statute that is not present in the text.
The court is unaware of any statute, decision, or any other authority allowing it to grant Plaintiffs' request. The legislature has already prescribed that, when the usage of a property does not meet the standard set forth in ORS 308A.056, it does not qualify for farm use special assessment. Therefore, the court cannot grant Plaintiffs' request.
 III. CONCLUSION
The court concludes that Defendant properly denied Plaintiffs' application for farm use special assessment because the requirements of ORS 308A.056 have not been met. In addition, the court cannot grant the Plaintiffs' request for a statutory exception based on an allegation of impossibility. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.
Dated this___day of June 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on June 6, 2011. The Court filed and entered this documenton June 6, 2011.
[1] All references to the Oregon Revised Statutes (ORS) are to 2007.
[2] ORS 308A.056(1), provides, in pertinent part:
 "(1) As used in ORS 308A.050 to 308A. 128, `farm use' means the current employment of land for the primary purpose of obtaining a profit in money by:
 "(a) Raising, harvesting and selling crops;
 "(b) Feeding, breeding, managing or selling livestock, poultry, fur-bearing animals or honeybees or the produce thereof;
 "(g) Preparing, storing or disposing of, by marketing or otherwise, the products or by-products raised for human or animal use on land described in this section; or
 "(h) Using land described in this section for any other agricultural or horticultural use or animal husbandry or any combination thereof." *Page 1